UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| **Frederick J. Dumont,** | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| **PepsiCo, Inc.** | ) | **Civil Action** |
| | ) | **Case No. 1:15-cv-369-NT** |
| And | ) | |
| | ) | |
| **PepsiCo Administration Committee,** | ) | |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER VENUE

Defendants have filed a motion to dismiss Plaintiff's complaint for improper venue or, alternatively, to transfer venue to the Southern District of New York.  Plaintiff will address each motion in turn.

## MOTION TO DISMISS

Dismissal is not a remedy that is available to Defendant.  The U.S. Supreme Court case cited by Defendants, *Atlantic Marine Constr. Co., Inc. v. United States Dist. Court for the W. Dist. of Texas*, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013), makes this clear.  The only federal statute allowing dismissal of a case brought in the wrong division or district is 28 U.S.C. §1406(a).  It provides as follows:  "The district court of a district in which is filed a case laying venue in the *wrong* division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought (emphasis supplied)."  28 U.S.C. §1406(a).  In the *Atlantic Marine* case, the U.S. Supreme Court reasoned that "a district cannot be 'wrong' if it is one in which the case could have been brought under §1391."  *Atlantic Marine Constr. Co., Inc.*, 134 S.Ct. at 578 & 579.  Since Pepsi Co. is "doing business" in Maine, venue

is proper (i.e. not wrong) in the District of Maine.  See *Atlantic Marine Constr. Co., Inc.*, 134 S.Ct. at 579 ("venue proper in judicial district in which corporation is doing business").  Since venue in this case is not "wrong", section 1406(a) is not applicable.  Defendants' only remaining avenue to change venue is 28 U.S.C. §1404(a).  Again, see *Atlantic Marine Constr. Co., Inc.*, 134 S.Ct. at 579.  Nowhere in section 1404(a) is dismissal authorized.  It authorizes only a transfer.  For these reasons, Defendants' motion to dismiss Plaintiff's complaint must be denied.

Defendants' cite *Kebb Mgmt., Inc. v. Home Depot U.S.A., Inc.*, 59 F. Supp. 3d 283, 287 (D. Mass. 2014) for the proposition that "a Rule 12(b)(6) motion remains a proper vehicle to seek enforcement of a forum-selection clause in the First Circuit."  With all due respect, *Kebb* got it wrong.  First, the *Atlantic* court did not "[opt] not to consider whether a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) would also be an acceptable alternative."  *Kebb*, 59 F.Supp.3d at 287.  No Rule 12(b)(6) motion was before the court in the *Atlantic* case so there was nothing to rule on.  *Atlantic Marine Constr. Co., Inc.*, 134 S.Ct. at 580. At any rate, it is clear that a Rule 12(b)(6) motion would not be an appropriate vehicle to seek dismissal based on a forum selection clause.  Rule 12(b) simply provides that certain defenses may be asserted by motion.  Fed.R.Civ.P. 12(b).  Rule 12(b)(3) allows one to assert the defense of improper venue by motion.  See Fed.R.Civ.P. 12(b)(3).  That is what the defendant did in *Atlantic*.  *Atlantic Marine Constr. Co., Inc.*, 134 S.Ct. at 575.  Rule 12(b)(6) allows one to assert the defense of failure to state a claim upon which relief can be granted by motion.  See Fed.R.Civ.P. 12(b)(6).  A failure to state a claim depends upon whether the allegations in a complaint, taken as true, state a claim upon which relief can be granted.  It has nothing to do with whether a claim has been brought in the proper venue.  Moreover, Rule 12(b) is simply a procedural mechanism.  It does not set forth the substantive law upon which a particular motion must be made.  As explained in *Atlantic*, the substantive rules governing venue are set forth in 28

U.S.C. §§1391, 1404(a) and 1406(a).  See *Atlantic Marine Constr. Co., Inc.*, 134 S.Ct. at 577-580.  Thus, Rule 12(b)(6) is not a mechanism by which one could raise a venue issue.  That should be done, as it was in *Atlantic*, by a Rule 12(b)(3) motion based on either 28 U.S.C. §1404(a) or §1406(a).

Section 1406(a) also allows transfer of a case "in the interest of justice".  In this case, if dismissed, the limitations period for bringing this claim would have expired.  Thus, dismissal would be final and this case could not be decided on the merits.  Justice, therefore, requires that if the court rules in Defendants' favor, this matter should be transferred to the United States District Court for the Southern District of New York, not dismissed.

## MOTION TO TRANSFER VENUE

In the alternative, defendants move to transfer venue from the District of Maine to the Southern District of New York pursuant to 28 U.S.C. §1404(a).  See "Defendants' Rule 12(b)(6) Motion to Dismiss or Alternatively 28 USC 1401(A)[1] Motion for Transfer of Venue with Incorporated Memorandum of Law" at 1 (hereinafter Dfs' Mtn. at __).

Citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, (1991), and *Atlantic Marine Constr. Co., Inc. v. United States Dist. Court for the W. Dist. of Texas,* 134 S.Ct. 568 (2013), Defendants begin by arguing that "[f]or many years the Supreme Court has strongly favored the enforcement of forum selection clauses." None of the three cases, however, involved ERISA cases, and certainly not ERISA cases such the one now before this court.  *Bremen*, decided in 1972, involve two corporations, one German and one American.  It involved a contract to tow a drilling rig "from Louisiana to a point off Ravena, Italy, in the Adriatic Sea, where [the American corporation] had agreed to drill certain wells."  See *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 3.  Justice Burger, writing for the

---

[1] Defendants clearly meant 1404(a), not 1401(A).  First, there is no 1401(A).  Second, 1401 relates to stockholder's derivative actions.

Court, starts out by acknowledging, contrary to what Defendants claim the preference is now, that "[f]orum-selection clauses have historically not been favored by American courts."

The Court then goes on to explain why that preference did not apply in the case before it. First, it involved two experienced and sophisticated corporations. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 12. It was, therefore, likely that the forum selection clause was bargained for during the negotiations. Second, the parties were from different countries. The contract was "a freely negotiated private international agreement." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 12. As the Court acknowledged "[n]ot surprisingly, foreign businessmen prefer, as do we, to have disputes resolved in their own courts …." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 12. Since one company was German and the other American, it made sense that they might freely and purposely negotiate to have a "neutral forum" with "long experience in admiralty litigation" decide any legal disputes. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 12. The ability of the parties to eliminate uncertainties "by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce and contracting." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 13-14.

The *Bremen* case held that "a *freely negotiated* private international agreement, unaffected by fraud, undue influence, or *overweening bargaining power* … should be given full effect" (emphasis supplied). *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 12-13. The instant case has none of these factors. The pension plans were not "freely negotiated" and PepsiCo had "overweening bargaining power". In fact, there was no bargaining. PepsiCo unilaterally developed the pension plans and unilaterally imposed the forum-selection clause. Moreover, *Bremen* did not involve ERISA, which brings significant policy issues to the table.[2]

_____

[2] See discussion at pages 7-10.

The second case cited by Defendants, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522 (1991), appears to weaken the "freely negotiated" requirement set forth in *Bremen* as long as the forum selection requirement is "reasonable". *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. at 593. It involved a forum-selection clause printed on the back of a cruise line ticket. Again, it did not involve ERISA which, as noted above brings additional policy issues to the table. In addition, Justice Stevens, joined by Justice Marshall, gave a well-reasoned dissent.

The most recent Supreme Court case, *Atlantic Marine Constr. Co., Inc. v. United States Dist. Court for the W. Dist. of Texas,* 134 S.Ct. 568, 187 L.Ed.2d 487 (2013), involved a contract between a Virginia construction company and the United States Army Corps of Engineers to build a child-development center at Fort Hood, Texas. *Atlantic Marine Constr. Co.*, 134 S.Ct. at 575. Atlantic Marine subcontracted some of the work to J-Crew Management, Inc. This subcontract included a forum selection clause requiring any suits to be brought in "the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division." *Atlantic Marine Constr. Co.*, 134 S.Ct. at 575. When a dispute arose, J-Crew sued Atlantic Marine in federal court in the Western District of Texas. *Atlantic Marine Constr. Co.*, 134 S.Ct. at 576. The District Court denied Atlantic Marine's motions to dismiss for improper venue or to transfer venue to the Eastern District of Virginia. *Atlantic Marine Constr. Co.*, 134 S.Ct. at 576. The Court of Appeals affirmed.

The U.S. Supreme Court overturned the decision, holding that "[w]hen the parties have agreed to a *valid* forum-selection clause[3], a district court should ordinarily transfer the case to the forum specified in that clause" (emphasis supplied). *Atlantic Marine Constr. Co.*, 134 S.Ct. at 581. The *Atlantic Marine* case, however, as in the *Bremen* case, involved two sophisticated

---

[3] The *Atlantic Marine* case states that the forum-selection clause must be "valid" on numerous occasions. See *Atlantic Marine Constr. Co.*, 134 S.Ct. at 581, 581, n.5, and 583, n. 8.

parties with reasonably equal bargaining power.  The Court underscores this on several occasions.  In discussing the usual venue options open to a plaintiff pursuant to 28 U.S.C. §1391, the Court states that "when a plaintiff agrees by contract to bring suit only in a specified forum - *presumably in exchange for other binding promises by the defendant* - the plaintiff has effectively exercised its 'venue privilege' before a dispute arises" (emphasis supplied).  *Atlantic Marine Constr. Co.*, 134 S.Ct. at 582.  The Court later states that "[a] forum-selection clause … may have figured centrally in the parties' negotiations …."  *Atlantic Marine Constr. Co.*, 134 S.Ct. at 583.  Clearly, that is not the case in this matter.  Plaintiff had absolutely no input into the type, provisions or forum-selection clause in either the salary or the hourly pension plans.

ERISA cases raise policy issues not present in the Supreme Court cases cited above.

First, one of the policies of ERISA is "to protect … the interests of participants in employee benefit plans and their beneficiaries … by providing for … ready access to the Federal courts."  29 U.S.C. §1001(b).  See also *Coleman v. Supervalu, Inc. Short Term Disability Program*, 920 F.Supp.2d 901, 906 (N.D. Ill. 2013).  The legislative history of ERISA also makes clear that Congress intended its enforcement provisions "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary duties."  H.R.Rep. No. 93-533, 93d Cong., 1st Sess. 17 (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4655.

Second, "§1132(e)(2)[4] is not a neutral provision merely describing the venues in which ERISA actions can be heard, but is rather intended to grant an affirmative right to ERISA participants and beneficiaries."  *Coleman v. Supervalu, Inc. Short Term Disability Program*, 920 F.Supp.2d at 906 (citing *Gulf Life Ins. Co. v Arnold*, 809 F.2d 1520, 1524-25 (11th Cir. 1987).

---

[4] 29 U.S.C. §1132(e)(2) which sets forth the venue options open to a participant or beneficiary bringing an action in an ERISA matter.

Third, 29 U.S.C. §1104(a)(1)(D) provides:

"… a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

   (D) in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter*" (emphasis supplied).

*Coleman* found that this provision, and the general policies of ERISA, prohibited forum-selection clauses in the ERISA context. *Coleman*, 920 F.Supp.2d at 906-908. The Department of Labor also espouses this view. See *Id.*, 920 F.Supp.2d at 907.

It is true that a majority, a vast majority actually, of federal District courts, and the only Circuit court to address the issue, have blindly applied the decision in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522 (1991) to forum-selection clauses in ERISA cases. Some District Courts have not blindly followed this path. See *Coleman v. Supervalu, Inc. Short Term Disability Program*, 920 F.Supp.2d 901, 906 (N.D. Ill. 2013); *Nicolas v. MCI Health & Welfare Plan No. 501*, 453 F.Supp.2d 972 (E.D. Tex. 2006); and *Wellmark, Inc. v. Deguara*, No. 02-CV-40534, 2003 WL 21254637 (S.D. Iowa 2003). At least one Circuit Court, in a decision four years before the decision in *Carnival Cruise Lines*, also held forum-selection clauses in ERISA plans invalid.

*Coleman* involved an action by a participant (plaintiff) against her employer and its short term disability plan (defendants) for denial of her claim for short term disability. Defendants moved to dismiss her claim or to transfer her claim to the forum set forth in the forum-selection clause of the plan. The court denied their motions. First, as described above, it went through the policy behind ERISA generally and the ERISA venue provisions. It then concluded that forum selection clauses run "counter to the strong public policy announced by Congress in ERISA." *Coleman*, 920 F.Supp.2d at 907-908. It went on to state that "Congress clearly desires open access to several venues for beneficiaries seeking to enforce their rights – and it is equally clear

Page **7** of **12**

that an employer's unilateral restriction of that access would undermine Congress' stated desire." *Coleman*, 920 F.Supp.2d at 908.

Citing *Carnival Cruise Lines*, Defendants argue that the fact the employer benefit plans are contracts of adhesion makes no difference. See Dfs' Mtn. at 7. The forum-selection clauses are still enforceable. But, as *Coleman* explains very well, there is a vital difference between the cruise ticket issued upon purchase of a cruise and an employee benefit plan. The cruise ticket is "written on a blank slate, permitting the cruise line to dictate the terms by which it would be willing to serve its customers (including the requirement that customers submit to a forum selection clause). When ERISA plans are formulated, however, participants automatically possess certain rights decreed by Congress." *Coleman*, 920 F.Supp.2d at 908. As *Coleman* goes on to say "[e]ven if a participant can waive certain of those rights, it must take more than his or her simple participation in a company-wide plan unilaterally created by an employer to hold that the participant's congressionally conferred right has been waived." *Coleman*, 920 F.Supp.2d at 908.

Essentially, Defendants' position is either (1) you accept the forum selection clause, or (2) you don't participate in the plan. If you accept the forum selection clause you then waive the right to choose the forum in which you may bring suit. As *Coleman* reasons, however:

> … a purported "right" subject to such conditions is no right at all. If that type of "waiver" were permitted, an employer could obliterate any ERISA requirements merely by including a term in its benefits plan that contradicts a statutorily established right. That would make ERISA no better than an unenforceable wish list, flouting the will of Congress completely. *Coleman*, 920 F.Supp.2d at 908.

In an odd set of facts, the Eleventh Circuit addressed this issue back in 1987. See *Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987). In *Arnold*, the employer fiduciary brought a declaratory judgment action against a former employee seeking a judgment that the former employee was not entitled to severance pay under an ERISA qualified employee benefit plan.

This was before forum-selection clauses were all the rage.  Instead of simply denying the former employee's claim, as it could have done, the employer sued in federal District Court in Florida. It did not take the court long to figure out that the employer brought suit in Florida, rather than denying the former employee's claim, so that it could litigate the matter in Florida, where its principal office was located, rather than in Tennessee where the former employee lived.  The District Court held that the venue provisions of 29 U.S.C. §1132(e)(2) were enacted to protect plan participants and beneficiaries and dismissed the action.  *Gulf Life Ins. Co.*, 809 F.2d at 1522.

The Eleventh Circuit affirmed the decision.  It reasoned that by the policy statement in 29 U.S.C. §1001(b) Congress intended "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities …."  It then went on to state "[w]ere we to adopt Gulf Life's view, the sword that Congress intended participants/beneficiaries to wield in asserting their rights could instead be turned against those whom it was designed to aid."  *Gulf Life Ins. Co.*, 809 F.2d at 1525.

Approving forum selection clauses does exactly what Gulf Life attempted to do before such clauses were prevalent.  Gulf Life was not allowed to get around the policy of ERISA then and PepsiCo should not be allowed to do so now.

Defendants also argue that forum selection clauses promote ERISA' goal of promoting uniformity, administrative efficiency and reducing costs.  Dfs.' Mtn. at 8-12.  The problem with this argument is that, although these might be subsidiary goals, the overriding policy of ERISA is set forth in 29 U.S.C. §1001 (the Congressional findings and declaration of policy):

> (b) … to protect … the interests of participants in employee benefit plans and their beneficiaries … by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

> …

> (c) … to protect …the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance. 29 U.S.C. §1001(b) & (c).

Nowhere in the policy statement is there any mention of uniformity, administrative efficiency, or reducing costs (legal or otherwise). The overriding goal and policy is to protect participants and beneficiaries. To the extent uniformity, administrative efficiency and reducing costs protect participants and beneficiaries, they are laudable goals. When they hurt participants and beneficiaries, however, the participants and beneficiaries must be given preference. As the *Gulf Life* case opined:

> … under Gulf Life's view of section 1132, if Gulf Life were headquartered in Guam it would be able to force Arnold to litigate his benefit plan rights in that forum. Although this states the case in its most extreme, it is not unusual for a national corporation to be headquartered in New York or in California. We believe that ERISA's legislative history unquestionably demonstrates that Congress did not intend to allow a fiduciary to force a plan participant/beneficiary who worked for a company for 30 years in Maine and who files a claim for benefits with that company, to be required to litigate his claim in Los Angeles. *Gulf Life Ins. Co.*, 809 F.2d at 1525, n.7.

Moreover, uniformity is relative. Forum-selection clauses may promote some uniformity within a particular company but the cases cited by Defendants in their motion were decided in 18 different districts (Arizona, Texas, California, Massachusetts, Illinois, Michigan, Minnesota, Louisiana, Missouri, New York, Florida, Iowa, Pennsylvania, Ohio, West Virginia, Tennessee, Alabama, and Kentucky). Only one of the 29 District Court cases cited by Defendants was from the Southern District of New York, the forum selected by PepsiCo. Obviously, many plans are choosing many different forums to put in their forum-selection clauses. This does not promote uniformity in interpretation over the broad spectrum of ERISA benefit plans. Uniformity, however, is overrated. Consistency has its benefits but it is much more important to get it right than to consistently get it wrong.

Nor are the litigation expenses likely to be much different for a large corporation whether it litigates in Maine or New York.  The difference for a retired employee, however, who may have little savings and who was relying on his/her pension payments to make ends meet, can be huge.

Finally, the 1st Circuit has upheld a Maine District Court's decision to deny a change of venue requested by an employer pursuant to a forum selection clause.  See *Law v. Ernst & Young*, 956 F.2d 364, 367 (1st Cir. 1992).  Admittedly, it did not make its decision on the merits of the issue.  Still, it certainly did not appear to show the reverence for forum selection clauses that some courts seem to have given them.

For all the above reasons, Defendants' motions to dismiss or, in the alternative, to transfer venue should be denied.

Dated:  October 23, 2015

/s/ Alton C. Stevens_____
Alton C. Stevens, Esq. – Bar No. 2666
Marden, Dubord, Bernier & Stevens
44 Elm Street, P.O. Box 708
Waterville, ME  04903-0708
(207) 873-0186
astevens@mardendubord.com

Attorneys for Plaintiff

**CERTIFCATE OF SERVICE**

I, Alton C. Stevens, hereby certify that on October 23, 2015, I electronically filed the above "Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss Or To Transfer Venue" with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:  Randall B. Weill, Esq. and Richard J. Paulter, Esq.

Dated:  October 23, 2015

/s/ Alton C. Stevens_____
Alton C. Stevens, Esq. – Bar No. 2666
Marden, Dubord, Bernier & Stevens
44 Elm Street, P.O. Box 708
Waterville, ME  04903-0708
(207) 873-0186
astevens@mardendubord.com