## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| FREDERICK J. DUMONT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Docket No. 1:15-cv-369-NT |
| | ) |
| PEPSICO, INCORPORATED and | ) |
| PEPSICO ADMINISTRATION | ) |
| COMMITTEE, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE

Before the Court is the Defendants' motion to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to transfer the action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) (ECF No. 6). For the reasons stated below, the motion is **DENIED**.

## BACKGROUND[1]

The Plaintiff in this action is Frederick Dumont, a retiree living in Fairfield, Maine. Compl. ¶¶ 1, 15 (ECF No. 1). The Defendants are PepsiCo, Inc. ("**PepsiCo**"), a North Carolina corporation authorized to do business in Maine, and the PepsiCo Administrative Committee, which administers the PepsiCo Hourly Employees

---

[1]   This factual recitation is based on the allegations in the Complaint, the documents attached thereto, and the Affidavit submitted by Chad Ryan, PepsiCo's Senior Director, Global Retirement Plans and Wellness. I include the Ryan Affidavit because undisputed facts outside the pleadings are fairly considered on a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). *Huang v. Napolitano*, 721 F. Supp. 2d 46, 47 n.2 (D.D.C. 2010).

Retirement Plan ("**Hourly Plan**") and the PepsiCo Salaried Employees Retirement Plan ("**Salaried Plan**") (together, the "**Plans**"). Compl. ¶¶ 2-3. This action arises from a dispute regarding the amount of benefits Dumont is owed under the Plans.

Dumont began working for Seltzer & Rydholm, Inc. in 1979. Compl. ¶ 11. Pepsi Bottling Group, Inc. purchased Seltzer & Rydholm, Inc. in 2004, and, in 2010, PepsiCo acquired Pepsi Bottling Group, Inc. Compl. ¶¶ 12, 14. For the first twenty-seven years and seven months of his employment Dumont worked as a salaried employee, and for approximately the final six years of his employment he worked as an hourly employee. Compl. ¶¶ 11-15. Dumont participated in both the Hourly and Salaried Plans. Compl. ¶ 7. Although the Plans are not in the record, documents attached to the Complaint repeatedly refer to the vested status of his benefits. *E.g.*, Pension Benefit Modeling Statement 4 (ECF No. 1-5) ("Vesting Percentage: 100%"); Apr. 4, 2013 Employer Benefits Statement 1 (ECF No. 1-8) ("Full Vesting Date 12/01/1984").

In 2010, PepsiCo made changes to the Plans. One of these changes was the addition of a forum selection clause. Oct. 1, 2015 Ryan Aff. ¶¶ 3, 5 ("**Ryan Aff.**") (ECF No. 6-1). The new forum selection clause in each of the Plans reads as follows:

> Any claim or action filed in court or any other tribunal in connection with the Plan by or on behalf of a Petitioner[2] . . . shall only be brought or filed in the United State District Court for the Southern District of New York, effective for claims and actions filed on or after January 1, 2011 . . . .

---

[2]     The Plans define "Petitioner" to include applicable participants in the Hourly and Salaried Plans. Oct. 1, 2015 Ryan Aff. ¶ 3 (ECF No. 6-1).

Ryan Aff ¶ 3. PepsiCo distributed notice of this change to participants in December of 2010. Ryan Aff. ¶ 5. Plaintiff retired from PepsiCo after May 31, 2013. Compl. ¶ 27. He now disputes the calculation of his retirement benefits under the Plans.

## LEGAL STANDARD

In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, the Supreme Court clarified the appropriate procedural vehicle and standard for enforcement of a "valid" forum selection clause. 134 S. Ct. 568, 581-83 (2013). Where the plaintiff has brought a case in a venue that is considered proper under the general venue statute (28 U.S.C. § 1391) or a more specific statutory venue provision such as that found in the Employee Retirement Income Security Act ("**ERISA**") (29 U.S.C. § 1132(e)(2)), " 'federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause.' " *Atl. Marine*, 134 S. Ct. at 579 (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 32 (1988)).

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A motion to transfer venue under § 1404(a) "calls on the district court to weigh in the balance a number of case-specific factors."[3] *Stewart Org.*, 487 U.S. at 29. "When the parties have agreed to a valid forum-selection

---

[3]    This Order does not require me to resolve whether to use Federal Rule of Civil Procedure 12(b)(6) or 28 U.S.C. § 1404(a) to enforce the forum selection clause. *See Claudio-De León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 n.3 (1st Cir. 2014).

clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine*, 134 S. Ct. at 581. "[W]hen a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id*. at 582. "When parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves . . . ." *Id*.

## DISCUSSION

The issue raised by the Defendants' motion is whether the Plans' forum selection clauses are enforceable against Dumont. Neither the United States Supreme Court nor the First Circuit has yet addressed whether forum selection clauses that channel participants challenging their ERISA benefit determinations to a single, plan-chosen forum are permissible.[4] One appellate court (through a divided panel) has held that forum selection clauses are enforceable in ERISA-governed plans. *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 932-33 (6th Cir. 2014). The majority of district courts to address the issue have likewise held that forum selection clauses are permissible in the ERISA plan context. *See, e.g.*, *Malagoli v. AXA Equitable Life Ins. Co.*, No. 14-cv-7180, 2016 WL 1181708, at *2 (S.D.N.Y. Mar. 24, 2016); *Turner v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 7:14-cv-1244, 2015 WL 225495, at *21 (N.D. Ala. Jan. 16, 2015); *Vega v. Carondelet Health Network*, No. cv-

---

[4]    In *Law v. Ernst & Young*, 956 F.2d 364, 367 (1st Cir. 1992), the First Circuit held that it lacked jurisdiction to consider a district court's unexplained denial of a motion to transfer based on a forum selection clause in an ERISA plan where the appellant's litigation strategy made the point moot.

12-617, 2013 WL 784365, at *3 (D. Ariz. Feb. 5, 2013); *Conte v. Ascension Health*, No. 11-12074, 2011 WL 4506623, at *4 (E.D. Mich. Sept. 28, 2011); *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F. Supp. 2d 855, 862 (N.D. Cal. 2010); *Sneed v. Wellmark Blue Cross & Blue Shield of Iowa*, No. 1:07-cv-292, 2008 WL 1929985, at *3 (E.D. Tenn. Apr. 30, 2008); *Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430, 437-38 (S.D.N.Y. 2007); *Schoemann ex rel Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000, 1007 (D. Minn. 2006); *Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, No. cv-06-2612, 2006 WL 2536590, at *2 (C.D. Cal. Aug. 29, 2006). Two district courts have held that forum selection clauses are not enforceable against ERISA plan participants. *See Coleman v. Supervalu, Inc. Short Term Disability Program*, 920 F. Supp. 2d 901, 909 (N.D. Ill. 2013); *Nicolas v. MCI Health & Welfare Plan No. 501*, 453 F. Supp. 2d 972, 974 (E.D. Tex. 2006).

## I.   The Evolution of Forum Selection Clause Jurisprudence

Courts have long recognized that plaintiffs hold a " 'venue privilege.' " *E.g.*, *Atl. Marine,* 134 S. Ct. at 581 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964)). This is the unremarkable proposition that a plaintiff gets to choose—consistent with jurisdictional and venue limitations—where to bring suit.

> But when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its "venue privilege" before a dispute arises. Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.

*Id.* at 582.

Historically, courts have disfavored forum selection clauses. However, *M/S Bremen v. Zapata Off-Shore Co.* marked a sea change in how courts treat them. 407 U.S. 1 (1972). In *Bremen*, the Supreme Court held that a freely-negotiated forum selection clause between two sophisticated international corporations was enforceable. The Court wrote:

> There is strong evidence that the forum clause was a vital part of the agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations.

*Id.* at 14 (footnote omitted). The presumption of enforceability of forum selection clauses "freely entered into between two competent parties" took hold. *Id.* (citation and internal quotations omitted). Under *Bremen*, unless the resisting party could show that the forum selection clause was invalid for such reasons as fraud or overreaching, or that enforcement would be unreasonable, unjust or would contravene a strong public policy, the clause would be enforced. *Id.* at 15.

In *Carnival Cruise Lines, Inc. v. Shute*, the Supreme Court "refine[d] the analysis of *The Bremen* to account for the realities of form passage contracts." 499 U.S. 585, 593 (1991). At issue in *Shute* was a forum selection clause printed on the back of a cruise ship ticket. The Court held that the forum selection clause was enforceable, even though the customer had unequal bargaining power and did not negotiate the terms of the contract. Scrutinizing the clause for "fundamental fairness," the Court noted that the customers "conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity." *Id.* at 595.

6

Following *Shute* and *Bremen*, the First Circuit upheld the enforcement of a forum selection clause "embedded" in a series of consent forms signed by a patient before a medical procedure. *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 12-13 (1st Cir. 2009). While the forum selection clause was a non-negotiated boilerplate provision between parties of unequal bargaining power, the First Circuit reasoned that the patient signed the form days before his procedure and "had the option of going to another hospital." *Id.* at 22.

The Court's most recent discussion of forum selection clauses is found in *Atlantic Marine*, where the Court addressed a "valid" forum selection clause and resolved a procedural issue. When a "plaintiff agrees" to a forum selection clause, the Court explained, it has effectively exercised its "venue privilege" and waived its right to challenge the pre-selected forum as inconvenient under 28 U.S.C. § 1404(a). *Atl. Marine*, 134 S. Ct. at 582.

An important distinction between the controlling forum selection clause cases and this case is that Mr. Dumont never agreed to the forum selection clauses contained in the Plans. As pled, Mr. Dumont did not play a part in the negotiation of the Plans, he did not sign off on the Plans, and he did not agree to the addition of the forum selection clauses in 2010.[5] Although he was sent notice of modifications to the Plans, including the forum selection clauses, he was not notified about the

---

[5]     "Welfare benefits plans must be 'established and maintained pursuant to a written instrument,' § 1102(a)(1)," but subject to procedural safeguards, " '[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.' " *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015) (alteration in original) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)). In other words, Dumont's assent to the forum selection clause was not required in order for it to become part of the Plans.

7

modifications at a time when he could do anything about it. He was 31 years into his career at the time the forum selection clauses were added, and his retirement benefits had already vested. He could not have simply chosen to work for another employer, the way the plaintiffs in the cases above could have chosen another cruise line, a different hospital, or a new corporate business partner.

*Bremen, Shute, and Atlantic Marine*, all of which focus on an agreement between the parties, do not fit the situation before me. The Defendants lean heavily on cases from outside of this District and Circuit that have held that forum selection clauses in ERISA plans can be enforced against plan participants. Turning to those authorities, a few patterns appear.

First, some of the decisions cited by the Defendants simply applied the *Bremen/Shute/Atlantic Marine* presumption of validity without really analyzing whether or why a party that has *not* agreed to the forum selection clause should lose the plaintiff's venue privilege. *E.g., Smith,* 769 F.3d at 930; *Haughton v. Plan Adm'r of Xerox Corp. Ret. Income Guarantee Plan,* 2 F. Supp. 3d 928, 933 (W.D. La. 2014); *Price v. PBG Hourly Pension Plan*, 921 F. Supp. 2d 764, 770 (E.D. Mich. 2013); *Vega,* 2013 WL 784365, at *3; *Scaglione v. Pepsi-Cola Metro. Bottling Co. Inc.*, 884 F. Supp. 2d 642, 643 (N.D. Ohio 2012); *Rodriguez*, 716 F. Supp. 2d at 857-58; *Williams v. CIGNA Corp.*, No. 5:10-cv-00155, 2010 WL 5147257, at *4 (W.D. Ky. Dec. 13, 2010); *Klotz,* 519 F. Supp. 2d at 433-34; *Rogal v. Skilstaf, Inc.*, 446 F. Supp. 2d 334, 338 n.3 (E.D. Pa. 2006).[6]

---

[6]     Some of the decisions cited by the Defendants are distinguishable because they suggest that the plan participant actually did "agree" to the plan. *See Malagoli v. AXA Equitable Life Ins. Co.*, No.

Some of the cases cited by the Defendants acknowledged that the plaintiffs before them had not agreed to the forum selection clauses, but found it sufficient that they, as ERISA participants, had knowledge of the term. *E.g.*, *Loeffelholtz v. Ascension Health, Inc.,* 34 F. Supp. 3d 1187, 1191-92 (M.D. Fla. 2014); *Smith v. Aegon USA, LLC,* 770 F. Supp. 2d 809, 811-12 (W.D. Va. 2011); *Testa v. Becker*, No. cv-10-638, 2010 WL 1644883, at *6-7 (C.D. Cal. Apr. 22, 2010). And a couple of courts held that it was not even essential for the participant to have knowledge of the forum selection clause, as long as the employer that negotiated the plan had notice. *See Angel Jet Serv., LLC v. Red Dot Bldg. Sys.' Emp. Benefit Plan*, No. cv-09-2123, 2010 WL 481420, at *2 (D. Ariz. Feb. 8, 2010); *Laasko v. Xerox Corp.*, 566 F. Supp. 2d 1018, 1024 (C.D. Cal. 2008).  In *Schoemann ex rel. Schoemann v. Excellus Health Plan, Inc.*, 447 F. Supp. 2d 1000 (D. Minn. 2006), the court stated:

> When a plaintiff sues a defendant, and the defendant seeks to enforce a forum-selection clause that was negotiated between the plaintiff and the defendant, it makes sense to refer to the forum selection clause as reflecting the "preference" of the parties for the venue identified in the clause. But when, as here, the contract was negotiated between a plan administrator and an employer, the forum-selection clause obviously does not reflect any "preference" of the beneficiaries. Indeed, it is likely that a typical beneficiary does not even know that the forum-selection clause exists. Perhaps, then, a forum-selection clause in an ERISA plan should be entitled to less weight than other forum-selection clauses when parties move to transfer under § 1404(a). But the Schoemanns go

---

14-cv-7180, 2016 WL 1181708, at *2 (S.D.N.Y. Mar. 24, 2016) (alternation in original) (internal quotations and citation omitted) ("Malagoli contracted with AXA in 2003 to allow[ ] [him] to receive retirement benefits while . . . [continuing] to receive commissions, fees . . ., and additional compensation."); *Mroch v. Sedgwick Claims Mgmt. Servs., Inc.,* No. 14-cv-4087, 2014 WL 7005003, at *2 (N.D. Ill. Dec. 10, 2014) ("The forum selection clause was established within Ascension's LTD plan contract and was clearly stated and agreed to when Plaintiff began working for Alexian Brothers."); *Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, No. cv-06-2612, 2006 WL 2536590, at *2 (C.D. Cal. Aug. 29, 2006) ("Plaintiff and defendant entered into a contract containing a forum selection clause . . . .").

> much further; they essentially ask this Court to declare that all forum-selection clauses in ERISA plans are invalid as a matter of law. The Court cannot agree. Nothing in ERISA compels that result, nor has any federal court reached that conclusion (as far as this Court knows).

*Id.* at 1007. The *Schoemann* court identified the problem, but ultimately concluded that ERISA beneficiaries "must take the bad with the good." *Id.*

Some of Defendants' cases cite *Shute* for the proposition that "adhesion," "form," or "unilateral" contracts no longer require arms-length negotiation as a precondition to the enforceability of forum selection clauses. *E.g.*, *Conte*, 2011 WL 4506623, at \*3-4; *Angel Jet Serv.*, 2010 WL 481420, at \*1-2; *Williams*, 2010 WL 5147257, at \*4; *Sneed*, 2008 WL 1929985, at \*3. But these cases do not distinguish *Shute* based on the fact that the Shutes were actually parties to the contract who could have walked away with impunity if they did not want to be bound by the forum selection clause.

The Defendants urge me to follow the long list of decisions they cite, but in doing so they ask me to go beyond what *Bremen*, *Shute*, and *Atlantic Marine* hold. The Defendants bear the burden on these motions and I cannot say from the record before me that Dumont either agreed to the Plans or that Dumont had an opportunity to walk away with impunity if he did not want to be bound by the forum selection clauses. *See Rivera*, 575 F.3d at 22 (enforcing forum selection clause against hospital patient, noting that he had the option of going to another hospital).

It is possible that under principles pertaining to third-party beneficiaries or doctrines of estoppel, the Plaintiff should be forced to live by the terms of the plan as agreed to by the employer and the plan administrator. But the Defendants do not

10

make these arguments or provide the facts or authority necessary to support them. Instead, the Defendants rely on their long list of cases—cases which are not binding precedent, which go beyond the holdings of *Bremen* and its progeny, and which do not offer satisfactory analysis[7] of the apparent third-party[8] position of the plaintiff.

Because I find that the Plaintiff did not agree to litigate in the venue contained in the forum selection clause and could not walk away from the Plans with impunity, I will not apply the presumption of validity[9] outlined in *Bremen* and its progeny. 407 U.S. at 10; s*ee Atl. Marine Constr. Co.*, 134 S. Ct. at 581. Accordingly, I proceed to analyze whether transfer to a district where the action could have been filed would be convenient for the parties and witnesses or "in the interest of justice." 28 U.S.C. § 1404(a). The moving party on a motion to transfer pursuant to 28 U.S.C. § 1404(a) "bears a 'substantial burden' of demonstrating why a change of venue is appropriate." *Galley v. Kreutzig*, No. 2:15-cv-47, 2015 WL 2349373, at *6 (D. Me. May 15, 2015) (quoting *Demont & Assocs. v. Berry*, 77 F. Supp. 2d 171, 173 (D. Me. 1999)). Having based their argument on the existence of a valid forum selection clause, the

---

[7]      I note that the court in *Turner v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 7:14-cv-1244, 2015 WL 225495, at *6 (N.D. Ala. Jan. 16, 2015) provided extensive analysis on the enforceability of forum selection clauses in the ERISA context and observed that despite the "lopsided split favoring enforcement," the question was "a close one." However, like many others, the *Turner* court did not analyze the issue from a third-party beneficiary perspective.

[8]      A case cited by the Defendants does note that in the Ninth Circuit a third-party beneficiary of an agreement is bound by a valid forum selection clause. *Angel Jet Serv., LLC v. Red Dot Bldg. Sys.' Emp. Benefit Plan*, No. cv-09-2123, 2010 WL 481420, at *2 n.1 (D. Ariz. Feb. 8, 2010).

[9]      I make no determination of the validity of the forum selection clause as between PepsiCo and the plan administrator—both presumably parties to the contract. I merely conclude that because the Plaintiff did not agree to the forum selection clause and could not walk away from it with impunity, it should not be enforced against him unless the requirements of 28 U.S.C. § 1404(a) are met.

Defendants have not met this burden. Thus, I decline to transfer this case from the District of Maine, a proper forum under ERISA's venue statute, 29 U.S.C. § 1132(e)(2), and the Plaintiff's home state, to the Defendants preferred venue in the Southern District of New York.

## II.   Even if Forum Selection Clause Case Law Applies, the Clause Should not be Enforced Because it Contravenes the Public Policy of ERISA

Although I am convinced that the *Bremen / Shute / Atlantic Marine* line of cases is inapplicable here because Dumont never *agreed* to litigate his ERISA claims in the Southern District of New York, out of an abundance of caution, I will also analyze the issue as if *Bremen* and its progeny controlled.

Under Supreme Court and First Circuit precedent, resolving whether to enforce a forum selection clause requires answering up to four questions:

(1) is the clause permissive or mandatory?
(2) is the dispute within the scope of the clause?
(3) is the clause unreasonable under the circumstances?
(4) given a valid[10] clause, has the resisting party demonstrated that public interest factors overwhelmingly disfavor transfer?

*See Atl. Marine*, 134 S. Ct. at 583; *Claudio-De León v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46-48 (1st Cir. 2014); *Rivera*, 575 F.3d at 17-19.

The Plaintiff argues that the forum selection clause is unreasonable under the circumstances. There are four ways that a forum selection clause may be unreasonable:

(1)  the clause was the product of fraud or overreaching;

---

[10]     The Supreme Court's reasoning in *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas* is explicitly based on the existence of a "valid" forum selection clause. 134 S. Ct. 568, 581 n.5 (2013). If a forum selection clause is unreasonable under the circumstances, and thus unenforceable, it is not "valid."

> (2)  enforcement would be unreasonable and unjust;
> (3)  proceedings in the contractual forum will be so gravely difficult and
> inconvenient that [the party challenging the clause] will for all practical
> purposes be deprived of his day in court; or
> (4)  enforcement would contravene a strong public policy of the forum in
>     which suit is brought, whether declared by statute or by judicial
>     decision.

*Claudio-De León*, 775 F.3d at 48-49 (alteration in original) (internal quotations omitted). The Plaintiff focuses his opposition to the forum selection clause on its public policy implications. Pl.'s Opp'n to Defs.' Mot. to Dismiss or Transfer Venue 6 ("**Pl.'s Opp'n**") (ECF No. 7).

The determinative question is whether enforcement of the forum selection clause would contravene a strong public policy of ERISA, as evidenced by the text of the statute, its legislative history, or judicial decision. *See M/S Bremen*, 407 U.S. at 15 ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.");[11] *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1242 (11th Cir. 2012) (evaluating whether public policy overrides a forum selection clause "by reference to the plain wording of the statute and its legislative history").

Congress enacted ERISA in 1974 in response to public dissatisfaction with poorly funded pension plans, onerous vesting requirements, and labor leader misuse of union benefit funds. James A. Wooten, *A Legislative and Political History of ERISA*

---

[11]      The parties proceed as if it is the public policy of *ERISA* that matters here, not the public policy of any particular forum, and I follow suit. Defs.' Mot. to Dismiss or Transfer 13 (ECF No. 6); Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss or Transfer 6 ("**Pl.'s Opp'n**") (ECF No. 7).

*Preemption, Part 1*, 14 J. Pension Benefits, 31, 32-33 (Autumn 2006); *see also Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 252 (1978) (Brennan, J., dissenting). Senator Jacob Javits, a sponsor of ERISA, observed at the time that "only a relative handful of the estimated tens of millions of American workers under private pension plans will ever get anything from the plans on which they now stake their futures." Wooten, *supra*, at 33 (internal quotations omitted). Fearing that states were going to enact a patchwork of pension reform legislation, employers began supporting federal regulation of private benefit plans, provided it had a strong preemption provision. *Id.* at 34-35.

ERISA's Subchapter I – entitled "Protection of Employee Benefit Rights" sets forth the Congressional findings and contains a declaration of policy. 29 U.S.C. § 1001. In enacting ERISA, Congress found that the "continued well-being and security of millions of employees and their dependents are directly affected by [employee benefit plans]." *Id.* §1001(a). Congress further declared that a policy of ERISA was "to protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and *ready access to the Federal Courts.*" *Id.* § 1001(b) (emphasis added).

ERISA's regulatory provisions contain a section on Civil Enforcement, which explains when participants may bring suit to enforce their rights under the statute. *Id.* § 1132. Legislative history reveals that the statute's

> enforcement provisions [were] designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act . . . [and] to provide the full range of legal and equitable remedies available in both state and

> federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.

H.R. Rep. No. 93-533, at 17 (1973), *as reprinted in* 1974 U.S.C.C.A.N. 4639, 4655.

As for venue, rather than defaulting to the general venue provision, 28 U.S.C. § 1391, ERISA's Civil Enforcement section contains its own, which provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). One of the three venue options ERISA lists is the federal district "where the breach took place." *Id.* Courts have interpreted this option as "the place where payment was to be received." *Cole v. Cent. States Se. & Sw. Areas Health & Welfare Fund,* 225 F. Supp. 2d 96, 98 (D. Mass. 2002) (internal citations omitted).

The Supreme Court has considered the enforceability of a forum selection clause that contravened a similar venue statute in the Federal Employers' Liability Act ("**FELA**"). In *Boyd v. Grand Truck Western Railroad Co.* the Court likewise evaluated a defendant's attempt to pre-select the venue for a dispute arising under a protective statute with its own venue provision. 338 U.S. 263 (1949). There, a railroad worker was injured on the job. *Id.* at 263. Following the worker's injury, his employer advanced him money in exchange for the promise that if he chose to litigate, he would file suit in the county or district where he resided when he was injured, or in the county or district where he was injured. *Id.* at 263-64. However, the worker went on to file suit outside of those pre-selected venues. *Id.* at 264.

15

Boyd's claim arose under FELA, which "provide[d] that '. . . an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action.' " *Id.* at 265 (quoting 45 U.S.C. § 56 (1947)). The Court determined that "[t]he right to select the forum granted in [FELA's venue provision] is a substantial right. It would thwart the express purpose of the [statute] to sanction defeat of that right by the device at bar." *Id.* at 266. Even though the special venue provision was permissive ("an action *may* be brought . . ."), it created a "sufficient[ly] substantial[ ]" right for Boyd to bring "suit in any eligible forum." *Id.* at 265. Thus, the contract limiting Boyd's choice of venue was unenforceable. *Id.*

In *Boyd,* even where the plaintiff expressly agreed to a forum selection clause, the Court refused to enforce it on public policy grounds because FELA was a protective statute containing a special venue provision. ERISA is also a protective statute with a special venue provision. Further, one of ERISA's explicit policy goals is to provide "ready access to the Federal Courts." 29 U.S.C. § 1001(b). I conclude that it would be contrary to the public policy of ERISA to enforce the Defendants' unilateral selection of venue, when Dumont, the participant, wishes to pursue his claim for benefits in his home district.[12]

---

[12]    As the Plaintiff points out, the Department of Labor ("**DOL**") has expressed this same view. Pl.'s Opp'n 7. Issues related to the enforcement of forum selection clauses in the ERISA context began appearing in case law around the mid 2000's. *See Turner*, 2015 WL 225495, at *21. The DOL first appeared as amicus to resist the enforcement of a forum selection clause against a plan participant in 2009. *See* Brief of the Secretary of Labor as Amicus Curiae in Support of Plaintiff-Appellee-Cross

The Defendants resist this conclusion by providing a different explanation for the phrase "ready access to the Federal Courts." They maintain that this phrase simply evidences Congress's concern that litigants be able to file suit in federal, rather than state, courts. Prior to ERISA, they posit, benefit claims were often limited to state court because the requirements of diversity jurisdiction were not satisfied—either because the parties were not diverse, or because the plaintiff's benefit claim did not satisfy the amount in controversy requirement. Defs.' Suppl. Mem. 7 (ECF No. 16-1). But Congress chose the phrase "ready access to the Federal Courts," not just "access to the Federal Courts." *See McDonnell v. United States*, No. 15-474, 2016 WL 3461561, at *14 (U.S. June 27, 2016) (quoting *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 299 n.1 (2006)) (applying "the presumption 'that statutory language is not superfluous' ").

The adjective "ready" in the term "ready access" in ERISA's policy provision is used in the sense of being "immediately available or at hand: that can be had or used

---

Appellant, Nicolas v. MCI Health & Welfare Plan No. 501, No. 09-40326 (5th Cir. Aug. 31, 2009), available at https://www.dol.gov/sol/media/briefs/nicolas(A)-8-31-2009.htm.

     In *Merrimon v. Unum Life Insurance Co. of America* the First Circuit considered an amicus brief the Department of Labor submitted in a separate litigation. 758 F.3d 46, 54 (1st Cir. 2014). Because the DOL spoke "with something less than the force of law, its interpretations [were] entitled to deference 'only to the extent that those interpretations ha[d] the 'power to persuade.' " *Id.* at 55 (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)). So while it is not dispositive in any way, I note that the DOL has filed an amicus brief in a similar case and argued that enforcement of a forum selection clause that would prevent a participant from bringing suit where he lives would be contrary to ERISA's public policy of providing ready access to federal courts. Brief of the Secretary of Labor as Amicus Curiae in Support of Plaintiff-Appellant, *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922 (6th Cir., Aug. 12, 2013) (No. 13-5492), available at https://www.dol.gov/sol/media/briefs/smith(A)-08-12-2013.htm.

at once." Webster's Third New International Dictionary 1890 (2002).[13] Under Defendants' argument, as long as "a" federal court is available, it can be "any" federal court designated in a forum selection clause (and presumably consistent with the options enumerated in § 1132(e)(2)). That means that a forum selection clause forcing a resident of Miami to litigate an ERISA claim in Seattle would satisfy Congress's intended goal of providing "ready access" to federal court. I disagree.

The "ready" federal court for Dumont is in the District of Maine. And while the Southern District of New York is more convenient than, say, the Southern District of California, the obstacles to an individual employee litigating nearly four hundred miles from his home are considerable. The tasks of securing out-of-state counsel or complying with *pro hac vice* requirements may be simple for some litigants, but I do not assume they are for Dumont, a retiree living in rural Maine. The federal courts in New York are less "immediately available or at hand" to Dumont than the federal courts in Maine.

If employers had the right to unilaterally eliminate the venue option most convenient for participants and beneficiaries, ERISA's goal of breaking down procedural barriers for those seeking to enforce their rights would be seriously undercut. *See Smith*, 769 F.3d at 935 (Clay, J., dissenting) (observing that § 1132(e)(2)'s broad jurisdictional grant for benefit claims "is indispensable for many of those individuals whose rights ERISA seeks to protect, since claimants in suits for

---

[13] When a word in a statute is not defined, courts may look to the dictionary for its plain meaning. *Perez-Olivo v. Chavez*, 394 F.3d 45, 49 (1st Cir. 2005). The word "ready" has multiple meanings, but in the context of the phrase "ready access to Federal Courts" this meaning fits best.

18

plan benefits—retirees on a limited budget, sick or disabled workers, widows and other dependents—are often the most vulnerable individuals in our society, and are the least likely to have the financial or other wherewithal to litigate in a distant venue."). The fact that ERISA's venue provision allows participants to file suit where they reside, coupled with the explicit textual statement in favor of "ready access" to federal court, means that enforcement of the forum selection clause is contrary to ERISA's public policy.

The Defendants point out that ERISA is a complex piece of legislation that has multiple policy concerns, including ensuring uniformity, predictability, and efficiency in the administration of plans. Defs.' Suppl. Mem. 1-6; *see also Conkright v. Frommert*, 559 U.S. 506 (2010). Indeed, ERISA does not mandate that employers offer employee benefit plans, but seeks to encourage them to do so " 'by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.' " *Turner*, 2015 WL 225495, at *2 (quoting *Conkright*, 559 U.S. at 517).

The Defendants maintain that enforcement of forum selection clauses is an important way to promote uniformity. They posit that by requiring that all benefit disputes be adjudicated in one district, plans will be interpreted uniformly. Defs.' Mot. to Dismiss or Transfer 9-10 (ECF No. 6). The Defendants' argument is overstated.[14] The decisions of federal district court judges are not binding precedent for other federal district court judges within that district. Binding authority comes

---

[14]     The Defendants managed to get along without the forum selection clauses until 2010.

from that district's court of appeals and the United States Supreme Court. *See Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 430 n.10 (1996) ("If there is a federal district court standard, it must come from the Court of Appeals, not from the over 40 district court judges in the Southern District of New York, each of whom sits alone and renders decisions not binding on the others."). In the Southern District of New York, the Defendants' desired venue, there are 47 federal district court judges.[15] An issue of plan interpretation would only become "uniform" in that district once the Second Circuit or Supreme Court weighed in. So while locating disputes in a single district may appear at first blush to promote uniformity in plan interpretation, it does not necessarily ensure it. Ultimate uniformity comes over time, first in the appellate courts and finally in the Supreme Court.

While uniformity, predictability, and efficiency are laudable, practical goals, they are achieved in other ways by ERISA[16] and they do not trump a participant's right to ready access to a federal court to resolve disputes. The limited question before me is whether, under the circumstances, the forum selection clause in this ERISA plan is unreasonable because it contravenes a strong public policy. Here, enforcing

---

[15]    *See* http://www.nysd.uscourts.gov/judges/District.

[16]    The uniformity goal is advanced by ERISA's preemption provision, which is "designed to 'establish pension plan regulation as exclusively a federal concern,' " *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46 (1987) (quoting *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523 (1981)), by prohibiting the alternative: namely, conflicting or inconsistent state regulation. *Id.* The uniformity goal is also furthered by employers' right to select deferential review of their plan administrators' benefit decisions. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 114-15 (1989) (if a plan delegates discretionary authority over benefit determinations to an administrator, then reviewing courts must uphold those decisions, unless they are arbitrary, capricious, or an abuse of discretion).

the forum selection clause would mean that Dumont cannot sue for benefits in the district where he lives—his most "ready" federal court. Although I acknowledge that there may be competing policy considerations, I conclude that enforcement of the forum selection clause would run afoul of the strong ERISA public policy in favor of ready access to the federal courts.

The Defendants also argue that if Congress had wanted to prohibit forum selection clauses, it could have included an express prohibition. Defs.' Mot. to Dismiss or Transfer 12. A number of courts have also noted this point. *E.g., Price v. PBG Hourly Pension Plan*, No. 12-15028, 2013 WL 1563573, at *2 (E.D. Mich. Apr. 15, 2013); *Rodriguez*, 716 F. Supp. 2d at 861; *Testa*, 2010 WL 1644883, at *5; *Klotz*, 519 F. Supp. 2d at 436; *Williams*, 2010 WL 5147257, at *4.  Of course, the flip side of this argument also holds true: if Congress had wanted to allow forum selection clauses, it could have expressly permitted them. What Congress intended by offering venue choices to participants and beneficiaries is best understood in light of the climate that existed in 1974 when ERISA was enacted. The concern that motivated ERISA was that workers who were relying on pensions were not going to receive them because plans were under-funded, draconian vesting rules were being used, or plan administrators were breaching basic fiduciary duties. Wooten, *supra* 14, at 32. The states were preparing to fix the problem, so employers and labor organizations agreed to support federal legislation to avoid a patchwork of state regulation. Wooten, *supra* 14, at 31-32.  *Bremen*, which was decided two years before ERISA was enacted, discussed the historical disdain for forum selection clauses. 407 U.S. at 9. And

21

although *Bremen* sanctioned forum selection clauses, it did so between two sophisticated international corporations that had clearly bargained for a forum selection clause in the contract to which they both agreed. There is no indication that Congress in 1974 would have thought that the presumption of enforceability of forum selection clauses would apply to a participant of a plan agreed to by others.[17] It was apparently not until the mid-2000's, after failing to reign in the expansive interpretations being given to the ERISA venue provision,[18] that plan administrators started including forum selection clauses in their plans. *Turner,* 2015 WL 225495, at *21 ("[I]t does not appear that issues related to forum-selection clauses in ERISA plans began appearing in the caselaw until about the mid-2000's . . . .").

Finally, the Defendants argue that because courts have enforced arbitration agreements covering ERISA claims, ERISA must also permit the enforcement of forum selection clauses. Defs.' Reply 6 (EFC No. 8). Although this argument has some logical appeal, the Defendants have not cited authority from the Supreme Court or the First Circuit holding that arbitration agreements are enforceable under ERISA.

---

[17]      Although ERISA has been amended many times since its passage in 1974, its venue provision has never been substantively changed. *Compare* Pub. L. No. 93-406, 88 Stat. 892 (1974), *with* 29 U.S.C.A. § 1132(e)(2) (2009).

[18]      For cases rejecting plan administrators' arguments that the "place where the breach took place" was the corporate headquarters where the plan administrator denied the benefits rather than the participant's residence where the benefits were not received, see: *Varsic v. U.S. Dist. Court for the Cent. Dist. Of Cal.,* 607 F.2d 245, 248 (9th Cir. 1979); *Blevins v. Pension Plan for Roanoke Plant Hourly Emps. of ITT Indus. Night Vision,* No. 6:10-cv-03261, 2011 WL 2670590, at *2 (D.S.C July 8, 2011); *Canada v. Am. Airlines, Inc. Pilot Ret. Benefit Program,* No. 3:09–0127, 2009 WL 2176983, at *3 (M.D. Tenn. July 21, 2009); *Roshinsky v. Reynolds,* No. 06–cv–6340, 2008 WL 2827528, at *3 (W.D.N.Y. July 21, 2008); *Cole v. Cent. States Se. & Sw. Areas Health & Welfare Fund,* 227 F. Supp. 2d 190, 194–95 (D. Mass. 2001); *Keating v. Whitmore Mfg. Co.,* 981 F. Supp. 890, 892-93 (E.D. Pa. 1997); *Brown Schs., Inc. v. Fla. Power Corp.,* 806 F. Supp. 146, 149, 151 (W.D. Tex. 1992); *Wallace v. Am. Petrofina, Inc.,* 659 F. Supp. 829, 832 (E.D. Tex. 1987); *Bostic v. Ohio River Co. Basic Pension Plan,* 517 F. Supp. 627, 637 (S.D.W. Va. 1981).

22

Nor have the Defendants cited any decision where an ERISA plaintiff has been held to an arbitration clause in a comparable factual setting to this case—namely, where a participant in a retirement benefit plan is forced to arbitrate based on a clause added unilaterally to a plan without any negotiation or opportunity to decline the term. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1103-04 (9th Cir. 2006) (holding that a non-signatory plan participant was not bound by an arbitration agreement between plan trustees and an investment firm in pursuing ERISA breach of fiduciary duty claims). Even if it is true that arbitration provisions in plans can be enforced against a participant, arbitration clauses are distinguishable because they involve the Federal Arbitration Act. *See Smith*, 769 F.3d at 935 (Clay, J., dissenting). Because ERISA has a strong public policy in favor of ready access to federal courts, enforcement of the forum selection clause against Dumont would be unreasonable.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendants' motion to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to transfer the action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) (ECF No. 6). The Court further **DENIES** the Defendants' request for attorneys' fees.


SO ORDERED.

                                                    /s/ Nancy Torresen
                                                    United States Chief District Judge

Dated this 29th day of June, 2016.